SECOND DIVISION
January 16, 2007

No. 1-06-0298

| | | |
|---|---|---|
| SELECTIVE INSURANCE COMPANY a/s/o | ) | |
| C R Leonard Plumbing and Heating, and | ) | Appeal from the |
| ROBERT C. CAMBRUZZI, | ) | Circuit Court of |
| | ) | Cook County. |
| Plaintiffs-Appellants, | ) | |
| v. | ) | |
| | ) | |
| JORGE A. URBINA and ANTONIO URBINA, | ) | |
| | ) | |
| Defendants-Appellees | ) | Honorable |
| | ) | Raymond Funderburk, |
| | ) | Judge Presiding. |
| (Universal Casualty Company, | ) | |
| | ) | |
| Third-Party Respondent-Appellee). | ) | |

JUSTICE SOUTH delivered the opinion of the court:

This case arises out of a garnishment action that was filed by plaintiff Selective Insurance Company against third-party respondent, Universal Casualty Company, in order to satisfy a judgment that was entered in favor of plaintiffs and against defendants.

Selective filed a negligence complaint against defendants, Jorge A. Urbina and Antonio Urbina, seeking damages arising out of a motor vehicle accident which occurred on April 17, 1999, between plaintiff's insured, Robert C. Cambruzzi, and Jorge. A judgment was obtained against defendants in the amount of $8,391.21, which included costs and interest.

Plaintiff subsequently filed a citation to discover assets to the third-party respondent,

1-06-0298

Universal, in order to satisfy the judgment amount from an automobile liability insurance policy which Universal had issued to Antonio, the owner of the vehicle, on February 12, 1999. The term of that policy was scheduled to run through February 12, 2000. The premiums were to be paid through Lincoln Acceptance Company (Lincoln), which is a premium finance company. Pursuant to this arrangement, Lincoln and Urbina entered into a premium finance contract, whereby Urbina agreed to pay Lincoln a total premium of $3,727 in nine monthly installments of $378 each beginning on March 10, 1999. The copy of the premium finance contract contained in the appellate record does not bear the signature of either Urbina or an authorized agent of Lincoln.

In response to the citation notice, Universal claimed that the insurance policy issued to Antonio in February 1999 was not in effect on April 17, 1999, the date of the accident, because it had received a cancellation request from Lincoln due to nonpayment of the premiums, and that pursuant to that request, it had cancelled the policy effective April 6, 1999.

Selective filed a motion for summary judgment. While acknowledging that Lincoln had requested cancellation of the policy, Selective submitted a copy of the premium finance contract between Lincoln and Urbina. Paragraph six of that contract reads in pertinent part:

"The assured irrevocably appoints the payee, and each

holder hereof their officers and agents as their *attorney-in fact with*

*power to cancel the policy(s) of insurance* or any of them upon

giving the assured 10 days written notice and to receive and receipt

for, in the name of the insured, all monies thereafter payable to the

assured, including the proceeds of any loss so payable." (Emphasis

1-06-0298

added.)

Selective pointed out the fact that Urbina's signature does not appear anywhere on the contract, which meant there is no evidence that he granted power of attorney to Lincoln to request cancellation of his insurance policy. Based upon that fact, Selective argued that Lincoln was not an agent for Urbina and was, therefore, without authority to request cancellation, and that the policy remained in full force and effect on the date of the accident, thereby rendering the proceeds available for payment of the judgment.

On November 1, 2005, the trial court entered an order denying plaintiff's motion for summary judgment and discharged Universal from the garnishment action. The court also stated in its order that there was no just reason to delay the enforcement or appeal of the order pursuant to Rule 304(a) (134 Ill. 2d R. 304(a)).

Plaintiffs have raised two issues for our review: (1) whether an insurer may cancel an automobile liability insurance policy at the request of a premium finance company in the absence of an assertion that said finance company was operating pursuant to a power of attorney; and (2) whether a cancellation made under such conditions is effective.

Initially, we note that neither defendants nor third-party respondent has submitted an appellee's brief with the court. Although a reviewing court is not compelled to serve as an advocate for an appellee, it may sustain the judgment of the trial court based on its review of the record as justice may require. First Capitol Mortgage Corp. v. Talandis Construction Corp., 63 Ill. 2d 128, 133 (1976). In other cases, if the appellant's brief demonstrates *prima facie* reversible error and the contentions of the brief find support in the record, the judgment of the trial court

- 3 -

1-06-0298

may be reversed. <u>First Capitol Mortgage Corp.</u>, 63 Ill. 2d at 133. Where the record is simple and the claimed error is such that the court can easily decide it without the aid of an appellee's brief, a reviewing court will decide the merits of the appeal. <u>First Capitol Mortgage Corp.</u>, 63 Ill. 2d at 133. Here, because the record is simple, we will decide the merits of the appeal without the benefit of the appellees' briefs.

Summary judgment is proper if, and only if, the pleadings, depositions, admissions, affidavits and other relevant matters on file show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. <u>Chubb Insurance Co. v. DeChambre</u>, 349 Ill. App. 3d 56, 59 (2004). The court reviews motions for summary judgment <i>de novo</i>. <u>Chubb Insurance Co.</u>, 349 Ill. App. 3d at 59.

Premium finance companies, such as Lincoln, are regulated by the Illinois Insurance Code (Code), specifically, section 513a1. 215 ILCS 5/513a1 (West 2004). A premium finance company is defined under the Code as "any person engaged in the business of financing insurance premiums, of entering into premium finance agreements with insureds, or of acquiring premium finance agreements." 215 ILCS 5/513a2(d) (West 2004). Lincoln falls within this definition and is, therefore, subject to the provisions, regulations, and dictates of this particular section of the Code.

The issue we are called upon to address involves Lincoln's request to Universal to cancel Urbina's policy. Whenever an insurance policy is cancelled by a premium finance company, such action is governed by section 513a11 of the Code, which reads in pertinent part:

"Cancellation requirements upon default.

- 4 -

(a) When a premium finance agreement contains a power of attorney enabling the premium finance company to cancel any insurance contract or contracts listed in the premium finance agreement, the insurance contract or contracts shall not be cancelled by the premium finance company unless the request for cancellation is effectuated under this Section.

(b) Not less than 10 days written notice shall be mailed to the named insured of the intent of the premium finance company to cancel the insurance contract unless the default is cured within the 10[-]day period.

(c) After expiration of the 10[-]day period, the premium finance company may request, in the name of the named insured, cancellation of the insurance contract or contracts by mailing or hand delivering to the insurer a request for cancellation, and the insurance contract shall be cancelled as if the request cancellation had been submitted by the name insured, but without requiring the return of the insurance contract or contracts.  The premium finance company shall also mail a copy of the request for cancellation to the named insured at his last known address." 215 ILCS 5/513a11 (West 2004).

Selective contends that since Lincoln was acting in the absence of Urbina's power of

attorney when it requested cancellation of the policy, it was in violation of section 513a11, and that, therefore, the policy was not cancelled but still remained in effect on the date of the accident. Plaintiff directs our attention to the clause which states that "the insurance contract *** shall not be cancelled by the premium finance company unless the request for cancellation is effectuated under this Section." 215 ILCS 5/513a11 (West 2004). Since the cancellation was not effectuated in accordance with the provisions of section 513a11, plaintiff reasons, Universal's cancellation was ineffective.

While there is no case authority directly on point as to this particular issue, there have been several decisions handed down which deal with the effect of cancellations when premium finance companies fail to comply with certain provisions of the Code. We turn to those cases for guidance.

In <u>Universal Fire & Casualty Insurance Co. v. Jabin</u>, 16 F.3d 1465 (7th Cir. 1994), the insurance company issued the defendants a one-year commercial liability policy on various properties which they owned. Arrangements were made to pay the premium by financing it with the Imperial Premium Finance Company. <u>Universal Fire & Casualty Insurance</u>, 16 F.3d at 1466. When the defendants missed a payment, Imperial took steps to cancel their insurance policy for nonpayment pursuant to the power of attorney provision in the premium finance agreement by mailing them a 10-day notice of intent to cancel and then a notice of cancellation. <u>Universal Fire & Casualty Insurance</u>, 16 F.3d at 1466. The dispute centered around whether or not Imperial actually mailed the notices of intent to cancel and cancellation, with defendants contending they never received them. When a person was killed on one of the defendants' properties, the estate

filed a wrongful death action against them. The decedent's attorney sent defendants a notice of the claim and an attorney's lien, which was forwarded to Universal, defendants' insurance company. Universal denied coverage for the accident, stating that the policy had been cancelled pursuant to a request from Imperial, the premium finance company, for nonpayment. Universal then brought a declaratory judgment action seeking a declaration that it had properly cancelled the defendants' policy and, therefore, had no obligation to defend or indemnify them against the wrongful death action. Universal Fire & Casualty Insurance Co., 16 F.3d at 1467. The defendants responded that the insurance policy remained in effect at the time of the accident because the premium finance company had failed to notify them before it attempted to cancel the insurance policy, and that the Illinois Premium Financing Act of the Insurance Code prevents a premium finance company from validly cancelling a policy with an insurer if it does not comply with the Act's notice provisions. Universal Fire & Casualty Insurance, 16 F.3d at 1467.

The district court granted summary judgment in favor of Universal, and on appeal the court assumed, as did the district court, that the premium finance company had, indeed, failed to give the defendants the required notice. Universal Fire & Casualty Insurance, 16 F.3d at 1467. However, in assuming that fact, the court determined that the premium finance company's noncompliance with the Code did not void a cancellation by the insurer because the Code provides that the insurance contract shall not be cancelled by the "premium finance company" unless such cancellation is effectuated in accordance with the Code. The court went on to state:

> "To effectively cancel financed policies, insurers could not rely on
>
> the finance company's assurances of compliance with the [Code],

1-06-0298

but would have to take independent steps to verify that the premium finance company had actually mailed the required notice to the insured. Alternatively, insurers would be obligated to cancel a policy upon the finance company's request, and refund the premium at the peril of having the policy later be resurrected if it is discovered that the finance company failed to meet its notice requirements. We refuse to read the premium financing statute as making insurers responsible for the wrongdoing of premium finance companies." Universal Fire & Casualty Insurance Co., 16 F.3d at 1469.

The court acknowledged that under the Illinois Insurance Code, an insurance contract shall not be cancelled unless the insured is notified of the impending cancellation. However, the court noted that this particular section of the Code, *i.e.*, the premium finance regulation act, of the Illinois Insurance Code directs and limits its dictates to premium finance companies, not insurance companies, and that a clear reading of the premium finance regulation act by its very name regulates and governs premium finance companies and their agreements. Universal Fire & Casualty Insurance Co., 16 F.3d at 1468. In concluding its analysis, the court stated:

"However, to construe the [Code] as reaching beyond premium finance companies to protect insureds by giving them recourse against insurers as well, would torture the [Code's] ordinary meaning. [The Code] specifically addresses its commands

- 8 -

to premium finance companies, and neither the paragraph nor the rest of the [Code] addresses insurers. We could not fairly read the phrase, 'shall not be cancelled by the premium finance company,' to mean 'shall not be cancelled by the premium finance company or the insurance company,' without creating in the [Code] a requirement that otherwise does not exist." (Emphasis omitted.)

Universal Fire & Casualty Insurance Co., 16 F.3d at 1468-69.

In Illinois Insurance Guaranty Fund v. Evanston Paper & Paper Shredding Co., 272 Ill. App. 3d 405 (1995), the fifth division of this district held that if the insured grants the finance company the power to cancel the insurance contract, the insurer may cancel the contract at the finance company's behest, and if the finance company has violated its statutory duties by requesting cancellation of the insurance, the insured must seek reparation from the finance company and not the insurer, which has no continuing duty to insure under the cancelled contract. Illinois Insurance Guaranty Fund, 272 Ill. App. 3d at 406. In that case, Mission National Insurance issued a policy insuring Evanston Paper & Paper Shredding against the risk of loss of a building it owned. Evanston obtained a loan from Afco Credit Corporation, a premium finance company, in order to pay the premium. A fire subsequently destroyed Evanston's building, and it filed a proof of loss with Mission. Illinois Insurance Guaranty Fund, 272 Ill. App. 3d at 407. Mission sued for a judgment declaring it had no liability because it had cancelled the policy prior to the fire. However, the facts showed that the notice to cancel the insurance policy was sent by Afco to Mission only five days prior to the stated cancellation date rather than the statutorily

mandated 10 days. <u>Illinois Insurance Guaranty Fund</u>, 272 Ill. App. 3d at 407. Evanston argued that the insurance had to remain in effect because in the absence of the required notice, the policy could not be cancelled. In affirming the circuit court, which granted summary judgment in favor of Mission, this court held that the premium finance company's violation of its statutory duties did not render the insurance company's cancellation of the policy ineffective. <u>Illinois Insurance Guaranty Fund</u>, 272 Ill. App. 3d at 409. Evanston also argued that the cancellation was ineffective because it had cured the default within 10 days, and cited to that section of the Code which states that when an insured cures a default on a premium finance contract, the insurance shall not be cancelled by the premium finance company. On that point, the court stated:

> "The Insurance Code imposes no such duty on the insurance company. Again, Evanston has alleged only that Afco breached a statutory duty by exercising its power to cancel the insurance even though Evanston cured the default. This argument does not present grounds for finding Mission liable." <u>Illinois Insurance Guaranty Fund</u>, 272 Ill. App. 3d at 409.

In <u>Haft v. Charter Oak Fire Insurance Co.</u>, 262 Ill. App. 3d 933 (1994), the issues were different from the ones presented in the instant case. In <u>Haft</u> the issues were whether a premium finance company was required to notify an additional insured and whether a private right of action exists under that part of the Insurance Code which governs the conduct of premium finance companies. However, for purposes of our analysis in this case, we find the discussion in <u>Haft</u> helpful in our resolution of the issues. In <u>Haft</u>, a tenant, who leased restaurant space in plaintiff's

building, obtained fire insurance from Travelers Insurance Company. The tenant was listed on the policy as the name insured, and the plaintiff was listed as an additional insured. Haft, 262 Ill. App. 3d at 934. The tenant signed a premium finance agreement with a premium finance company, under which the company paid the full premium of the insurance policy to Travelers, and the tenant agreed to make monthly payments to the premium finance company. The agreement also contained a power of attorney authorizing the premium finance company to act on behalf of the tenant in matters relating to the policy. Haft, 262 Ill. App. 3d at 934. When the tenant's checks were returned for insufficient funds, the premium finance company sent a notice of its intent to cancel the insurance policy to the tenant if he did not pay the overdue installment within 10 days; however, it did not send a notice to plaintiff, the additional insured, of its intent to cancel. Haft, 262 Ill. App. 3d at 934. When the tenant failed to submit payment within 10 days, the premium finance company exercised the power of attorney and requested cancellation of the insurance policy by sending it to Travelers with a copy to the tenant, but it did not send a copy of the request to plaintiff. Based upon that cancellation request, Travelers cancelled the insurance policy. Subsequently, a fire partially destroyed the property. Plaintiff notified Travelers of the loss, but Travelers refused to pay because it had cancelled the policy. Plaintiff filed a lawsuit against the premium finance company, alleging it had never notified him of its intent to cancel and request to cancel the insurance policy. The court determined that the premium finance company was required under the Code to notify the additional insured when it requested cancellation of the policy, and that a private right of action exists under that part of the Code which governs the conduct of premium finance companies. However, the premium finance company argued that it

was not necessary to provide the plaintiff with a private remedy because he had one against the insured, and that if the Code was violated, the policy was never cancelled and the plaintiff must seek recovery from the insurer. In response, this court stated:

> "With this interpretation [the premium finance company] attempts to impose a duty on the insurer the legislature did not intend. The statute states that the insurance policy 'shall not be cancelled' by the premium finance company unless it follows certain requirements. [Citation.] Had the legislature intended a violation of [the Code] to block cancellation of the policy, then it could have so stated. It could have used the same language of section 143.14, which requires the insurer to send notice of cancellation to the named insured. If an insurer violates this section the result is that '[n]o notice of cancellation of any policy of insurance *** *shall be effective*.' [Citation.] " (Emphasis in original.) Haft, 262 Ill. App. 3d at 937-38.

Although the instant case does not involve a violation of the notice requirement of the Code, we believe the same reasoning should apply with respect to powers of attorney. Here, Universal received from Lincoln a cancellation request which stated that "CERTIFIED NOTICE has been mailed to the insurers named below. Please CANCEL for NONPAYMENT effective 4-06-99." Since the premium finance contract contained in the record does not contain Urbina's signature at the bottom, we shall assume for purposes of this appeal that Lincoln did not have the

power of attorney to cancel the insurance policy. However, once Universal received the cancellation request, it was within its right to honor the request and act accordingly. The Code did not require Universal to independently verify whether Lincoln had fulfilled its statutory obligations by having in its possession a valid power of attorney. Lincoln's violation of the Code did not operate to negate the effectiveness of Universal's cancellation. To reiterate the principle stated repeatedly throughout the preceding cases we have discussed, section 513a11 addresses itself solely to premium finance companies and imposes no obligations or sanctions on insurance companies that act in accordance with cancellation requests. Therefore, we find that Universal's cancellation of the Urbina insurance policy on April 6, 1999, was effective, and no coverage existed at the time of the accident on April 17, 1999.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

WOLFSON, P.J., and HALL, J., concur.