2023 IL App (1st) 221576-U

FIRST DISTRICT,
FIRST DIVISION
May 30, 2023

No. 1-22-1576

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| IN RE MARRIAGE OF: | ) ) | Appeal from the Circuit Court of Cook County, Illinois. |
| ANGELA BOTERO, | ) ) | |
| Petitioner-Appellee, | ) ) | No. 2020 D4 30228 |
| v. | ) ) | |
| JOSE TRANSITO ROQUE, | ) ) | Honorable Maura McMahon Zeller, Judge Presiding. |
| Respondent-Appellant. | ) | |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Justices Pucinski and Hyman concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Trial court's decision to extend a plenary order was against the manifest weight of the evidence.

¶ 2    Petitioner-appellee Angela Botero filed for dissolution of marriage from respondent-appellant Jose Roque on June 15, 2020. On August 12, 2020, the trial court granted Angela an emergency order of protection against Jose. Following a September 2, 2020, hearing, the trial court entered a two-year plenary order of protection. In September 2022, the trial court extended the plenary order of protection for an additional two years. On appeal, Jose argues that the trial court's

decision was against the manifest weight of the evidence. For the following reasons, we reverse and vacate the judgment of the circuit court extending the plenary order of protection.

¶ 3                                                    BACKGROUND

¶ 4          Angela and Jose were married on April 29, 2017. Although both parties entered the marriage with children, no children were born of the marriage. On June 15, 2020, Angela filed a petition for dissolution of marriage. On July 14, 2020, Jose filed a response to Angela's petition and a counter-petition for dissolution of marriage.[1]

¶ 5          On August 12, 2020, Angela filed an *ex parte pro se* petition for an order of protection alleging that Jose: choked her and bit her cheek on June 25, 2017, forced her to engage in sexual activity without consent in Fall 2019, blocked her credit cards and "put cameras up to monitor [her]" after receiving notice she had filed for divorce in June 2020, "locked [her] clothes up" on or about August 10, 2020, "damaged and destroyed" the bedroom closet door, and "controlled" her throughout the relationship by pushing, grabbing, and shaking her, calling her names, and breaking her cell phone. The court granted Angela's *ex parte* petition and entered an emergency order of protection, granting her exclusive possession of the 815 North Milwaukee Avenue residence. The matter was continued to September 2, 2020, for a hearing on Angela's petition for a plenary order of protection.

¶ 6          In the interim, Jose filed an "Emergency Verified Petition to Rehear Petitioner's *Ex Parte* Emergency Petition for Order of Protection *Instanter*." He denied the allegations in Angela's petition and complained that he did not have "notice of the initial hearing." He also asserted that

_____

[1] There is no information in the record regarding the resolution of the dissolution of marriage proceedings.

the order of protection prevented him from residing "at his non-marital residence" and accessing his personal property.[2]

¶ 7        At the September 2, 2020, hearing, Angela testified that she was living with her daughter at the 815 North Milwaukee residence. Jose had lived there prior to the *ex parte* order of protection being entered. "[B]y the end of June," Jose knew that Angela had filed for divorce after three years of marriage. Jose had installed cameras throughout the home at "the end of May" but "informed her that they weren't working." On August 10, 2020, Jose locked her clothing and personal belongings in the bedroom closet. The next day, Jose broke down the locked door and left her a note demanding she "take all her stuff" or "he was going to harm her."

¶ 8        Angela also testified that Jose bit her on the cheek and choked her on June 25, 2017, and "committed acts of violence" against her in 2020, although she could not recall the exact dates. In March 2020, Jose returned home drunk, tried to take Angela's keys, broke all of the photographs in the living room, and pushed her. In May 2020, Jose returned home drunk and tried to force her to have sex. In June 2020, Jose accused her of being a prostitute and "started to be a lot more aggressive with her." In July 2020, Jose shoved her "whenever he walk[ed] by." Angela and Jose did not see each other in August 2020. Angela testified that she "is scared for her and her daughter" because Jose's "threat of ruining her could be true" and he "has a license to have a firearm."

¶ 9        On cross-examination, Angela admitted that she did not see Jose break the bedroom door on August 11, 2020, but denied that she "contributed to the damage." Angela returned to the home after the emergency order of protection was entered on August 12, 2020, because she "felt safe with the order and with the cameras." She acknowledged that Jose owned the residence and her name was not on the title or deed.

---

[2] While Jose owned the residence and Angela's name was not on the title or deed, they both lived at the residence during their marriage.

¶ 10        Jose testified that on August 11, 2020, he left the residence to pick up his daughter. Angela was at home when he left. When he returned, the police were there and "all the doors [in his] bedroom were [*sic*] broken." Jose "noticed that [Angela] was drunk" and "very mad." He also noticed that the wood blocks he used to block his bedroom door were askew. Jose blocked his bedroom door to prevent Angela from coming home "drunk" and forcing him "to engage in sexual activity against [his] will." Jose denied damaging any property or striking or pushing Angela and explained that the video cameras were installed as security for his home office. He did not see Angela on August 12, 2020, or learn she had obtained an order of protection that day until later.

¶ 11        At the conclusion of the September 2, 2020, hearing, the court entered a two-year plenary order of protection on behalf of Angela. The court found Angela's testimony was "clear" and "credible," Jose's testimony was not credible, and that Angela "would be in danger of further abuse" if Jose remained in the residence.

¶ 12        On January 6, 2021, Jose filed an "Emergency Verified Petition for Temporary Restraining Order and Preliminary Injunction," alleging that Angela had tampered with his mail, stolen checks that were delivered to the 815 North Milwaukee residence and sold Jose's personal property. On January 8, 2021, an agreed order was entered directing Angela to "immediately return" Jose's mail and checks and enjoining her from selling, transferring, concealing *** or otherwise dissipating" any of Jose's property. Angela was also ordered to "stay away" from Jose and refrain from "entering or remaining" at Jose's workplace or contacting him in any "manner whatsoever."

¶ 13        On March 25, 2021, the circuit court entered an order requiring Angela "to vacate the residence at 815 North Milwaukee *** by April 8, 2021," granting Jose exclusive possession of the residence, and prohibiting Angela from reentering the premises. Angela vacated the premises on April 8, 2021.

¶ 14          On April 13, 2021, Jose filed a "Petition for Rule to Show Cause and Adjudication of Indirect Civil Contempt," alleging that Angela had violated the January 8, 2021, order by damaging and/or removing his property from the residence and by failing to return Jose's mail and checks.

¶ 15          On June 17, 2021, the circuit court issued a rule against Angela to show cause why she should not be held in contempt of court for violating the January 8, 2021, order. On September 14, 2021, the circuit court held Angela in contempt "for misappropriating funds" and ordered her to pay Jose $3,000 within 30 days.

¶ 16          On August 22, 2022, Angela filed a motion seeking to extend the plenary order of protection, which was set to expire on September 2, 2022, asserting:

> "[W]e must *prevent* [Jose] from having access to his weapons again, we must *prevent* him from starting to intimidate me with his threats or the *possibility* that, he shows up at my address since his lawyer *** informed her client of my address. I know that he will carry out his threats of physical, moral, social and labor violence." (Emphasis added.).

The circuit court temporarily extended the order of protection to September 23, 2022, pending a hearing on Angela's motion.

¶ 17          On September 16, 2022, Jose filed a verified answer to Angela's allegations, asserting that he had not communicated with her since the plenary order of protection was entered on September 2, 2020. Although Angela had given her new address to his office assistant sometime in early Spring 2021, he had "never gone anywhere near her." Jose added that Angela "has repeatedly posted where she works with her boyfriend *** and her contact number" on Facebook. Jose denied owning "any weapons of any nature or kind" or threatening Angela.

¶ 18        At the September 23, 2022, hearing, the court asked Angela why she wanted the order of protection extended. Angela responded, "So in my file, you can see the times that the police had to come to intervene, and the worse one being where he grabbed me and tried to bite my cheek. *** [t]he most relevant point is that my residence was a protected address, and [Jose's counsel] gave [Jose] my address putting me in danger." When asked how the order of protection was going to help since Jose already had her address, Angela indicated that she planned to move. Angela admitted that Jose never contacted her after the order of protection was entered, but insisted that Jose "is violent, he's threatened me" and "has the ability to make me disappear."

¶ 19        On cross-examination, Angela claimed that Jose had left a bullet in the house and turned off the water sometime in March 2021. She conceded that she did not see this happen, take photographs, or make a police report. Angela also claimed that she had received anonymous phone calls and "the only person that would do that is Jose," but she did not file a police report concerning these alleged calls. When the court inquired if she was "still fearful of Mr. Roque based on the allegations in the Order of Protection [she] received two years ago?", she responded, "I panic." No further details were provided.

¶ 20        At the conclusion of the hearing, the trial court extended the plenary order of protection for two more years, until September 23, 2024. The court based its ruling on "the allegations in the previous Order of Protection, based on Ms. Botero's testimony that she is still fearful of Mr. Roque, and based on the recent case of *Richardson and Booker*, where I must consider the past findings of abuse when I'm considering this petition."

¶ 21                                    ANALYSIS

¶ 22        Angela has not filed a brief on appeal. On February 9, 2023, this court ordered the case taken on Jose's brief only, and we are deciding the merits of the appeal without the benefit of an

appellee brief. *Selective Insurance Co. v. Urbina*, 371 Ill. App. 3d 27, 29 (2007) ("Where the record is simple and the claimed error is such that the court can easily decide it without the aid of an appellee's brief, a reviewing court will decide the merits of the appeal.").

¶ 23 Jose argues that the trial court erred in extending the plenary order of protection because Angela failed to establish "good cause." Jose asserts that the "mere passage of time," particularly in view of his compliance with the initial plenary order, does not constitute good cause for extending the order. We agree.

¶ 24 The purpose of the Domestic Violence Act ("the Act") is to support victims of domestic violence to avoid further abuse and "reduce the abuser's access to the victim *** so that victims are not trapped in abusive situations" (750 ILCS 60/102(4)) and to expand the victim's civil and criminal remedies to effect physical separation from the abuser (750 ILCS 60/102(6)). The Act provides for three types of orders of protection: emergency (750 ILCS 60/217), interim (750 ILCS 60/218), and plenary (750 ILCS 60/219). Section 219 of the Act provides that a plenary order of protection, the type involved here, "shall issue" if the petitioner has, among other things, satisfied the requirements of section 214 of the Act. 750 ILCS 60/219. Section 214(a) of the Act provides that an order of protection shall be issued "[i]f the court finds that petitioner has been abused by a family or household member." 750 ILCS 60/214(a).

¶ 25 The standard of proof in a proceeding to obtain an order of protection is proof by a preponderance of the evidence. 750 ILCS 60/205(a); *Best*, 223 Ill. 2d at 348. "A preponderance of the evidence is evidence that renders a fact more likely than not." *People v. Uridales*, 225 Ill. 2d 354, 430 (2007); *Wells Fargo Bank, N.A. v. Hansen*, 2016 IL App (1st) 143720, ¶ 17. When a trial court issues a ruling based on the preponderance of the evidence, "this court will reverse the finding only if it is against the manifest weight of the evidence." *Best*, 223 Ill. 2d at 348-49; *Stapp*

*v. Jansen*, 2013 IL App (4th) 120513, ¶ 16. A finding is not against the manifest weight of the evidence unless the opposite conclusion is clearly apparent or the finding is unreasonable, arbitrary, or not based on the evidence presented. *In re Marriage of Romano*, 2012 IL App (2d) 091339, ¶ 44.

¶ 26       The two-year plenary order of protection entered on September 2, 2020, prohibited Jose from "abus[ing] or threaten[ing] to abuse" Angela and from having any contact with her. On August 22, 2022, Angela moved to extend that order, which would have expired on September 2, 2022, if not extended.

¶ 27       Section 214(a) of the Act provides that the modification or extension of prior orders of protection "shall be in accordance with this Act." 750 ILCS 60/214(a). Section 220(e) provides, in part:

> "Any emergency, interim or plenary order may be extended one or more times, as required, provided that the requirements of Section 217, 218, or 219, as appropriate, are satisfied. If the motion for extension is uncontested and petitioner seeks no modification of the order, the order may be extended on the basis of petitioner's motion or affidavit stating that there has been no material change in relevant circumstances since entry of the order and stating the reason for the requested extension. An extension of a plenary order of protection may be granted, *upon good cause shown*, to remain in effect until the order of protection is vacated or modified." (Emphasis added.) 750 ILCS 60/220(e).

¶ 28       In *Stapp v. Jansen*, 2013 IL App (4th) 120513, the fourth district of this court clarified that the "no material change in relevant circumstances" language in section 220(e) applies only when the petitioner seeks an uncontested extension of an order of protection and has "no application" where, as in the instant case, the extension is contested. *Id.* ¶ 15; 750 ILCS 60/220(e).

¶ 29    Angela alleged that an extension was warranted because "we must *prevent* [Jose] from having access to his weapons again, we must *prevent* him from *starting* to intimidate me with his threats or the *possibility* that, he shows up at my address." (Emphasis added.). She claimed to know "that he *will carry out* his threats of physical, social and labor violence." (Emphasis added.). Angela's speculative beliefs do not establish good cause.

¶ 30    The only evidence that was not based on the allegations in the original petition was Angela's testimony that Jose left a bullet in the residence and turned off the water on some unspecified date in March 2021, and that Jose was responsible for some anonymous phone calls she received. Angela did not see Jose leave the bullet or turn off the water, did not take photographs of the bullet, could not confirm that Jose made the calls, and did not file a police report after any of these incidents. Significantly, Angela conceded that Jose never contacted her after the order of protection was entered on September 2, 2020.

¶ 31    The circuit court extended the order of protection based on "the allegations in the previous Order of Protection," the fact Angela "is still fearful" of Jose, and "based on the recent case of *Richardson and Booker*, where I must consider the past findings of abuse when I'm considering this petition."

¶ 32    Section 220(e) makes clear that in a case involving a contested motion to extend, like this case, the findings in the original order cannot be the basis for extending the order. 750 ILCS 60/220(e); *Stapp*, 2013 IL App (4th)120513, ¶ 15. Furthermore, unlike this case, *Richardson v. Booker*, 2022 IL App (1st) 211055, involved the trial court's denial of the petitioner's *initial* petition for a plenary order of protection against the respondent. *Id.* ¶ 1. After a physical incident with the respondent on March 14, 2021, the petitioner was granted an emergency order of protection. *Id.* ¶ 4. In her amended petition for a plenary order of protection and trial testimony,

the petitioner detailed four incidents of abuse during her relationship with the respondent that occurred on March 14, 2021, June 30, 2020, September 3, 2015, and January 2015. *Id*. ¶¶ 1, 5-8.

¶ 33 After a hearing, the trial court found that the 2015 incidents were of "limited relevance," finding that "the operative question was 'did the Respondent initiate[] a physical fight' on March 14, 2021." *Id.* ¶¶ 38-39. In making that determination, the circuit court found that petitioner's testimony regarding the earlier incident differed "substantially" from her allegations in the amended petition, and that this "damage[d]" her credibility. *Id.* ¶ 40. Ultimately, the court found that without corroborating evidence of the March 14, 2021, incident and with the petitioner's credibility damaged, it "could not say that 'it's more probably true than not true' " that the respondent started the fight, and denied the petitioner an order of protection. *Id.* ¶ 40.

¶ 34 On appeal, we found that the court failed to consider whether the petitioner had been abused on each of the four prior occasions, failed to consider whether any use of force by the petitioner was justified, and failed to "fully consider the evidence petitioner presented of past instances of abuse." *Id.* ¶¶ 49, 53, 55. We noted that "it was error for the court *** to disregard these past instances of abuse in determining that an order of protection should not issue." *Id.* ¶ 59. The issue in *Richardson* was whether the petitioner established sufficient evidence to warrant granting an initial plenary order of protection, whereas the issue here is whether the petitioner established "good cause" to extend a plenary order that was already in place. Accordingly, the trial court's reliance on *Richardson* in extending this protection order was misplaced.

¶ 35 CONCLUSION

¶ 36 The trial court's decision to extend the plenary order of protection based on "past findings of abuse" was against the manifest weight of the evidence. Accordingly, we reverse the judgment

of the circuit court granting Angela's motion to extend and vacate the order extending the original plenary order of protection entered on September 23, 2022, for an additional two years.

¶ 37        Reversed and vacated.